# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES,

      Plaintiff,

vs.

AARON M. QUACKENBUSH,

      Defendant.

Case No. 3:18-cr-00033-RCJ-WGC

**ORDER**

Defendant moves for compassionate release based on his medical conditions in conjunction with a heightened risk of becoming infected with COVID-19 while incarcerated. The Court denies this request because Defendant has not presented an extraordinary and compelling basis for relief, he poses a threat to society, and granting such a reduction would not be a sufficient sentence. The Court therefore denies the motion.

## FACTUAL BACKGROUND

On June 18, 2017, Twitter reported the existence of child pornography that had been uploaded by an account associated with Defendant. (PSR ¶ 6.) This began an investigation into Defendant, which ultimately revealed that Defendant had received and possessed over 600 images of child pornography. (*Id.* ¶ 31.) On February 28, 2018, the police questioned Defendant, and

Defendant admitted to receiving and possessing child pornography. (*Id.* ¶¶ 14–24.) Defendant admitted that he had been viewing child pornography for approximately fourteen years before the interview. (*Id.* ¶ 15.) While Defendant "denied having any hands-on experience with kids," he also stated that he did "fantasize" about it. (*Id.* ¶ 21.) Despite this claim, agents found text messages between Defendant and his then-girlfriend "in which he described himself as a 'monster' when chatting with her about child pornography and admitted to having molested children." (*Id.* ¶ 22.) Indeed, investigation of his electronic devices uncovered that he had searched "where to buy a child for sex in Reno" and "babysitting jobs." (*Id.* ¶ 31.) A conversation that Defendant had on his Twitter account reads:

> Other user: So you have any nice pic you want to share
> Defendant: I do how about you?
> Other user: I've got no pic sorry...wish I had
> Defendant: What are you looking for exactly
> Other user: Anything you want to send
> Defendant: Naked and young
> Defendant: How young do you like?
> Other user: I don't mind how about you
> Defendant: I like around l0 yo my girlfriend likes around 8
> Defendant: Thanks man and I bet they do. My neighbors have a couple young girls my gf is trying to get them to let us babysit
> Other user: U going to try to get some of neighbours panties
> Defendant Yes hopefully we can
> Other user: Let me know how u go
> Other user: What ages are the girls
> Defendant: I think they are 5 and 13

(ECF No. 33 at 3–4.)

Defendant was charged with one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b). (ECF No. 1) Defendant pleaded guilty without an agreement. (ECF No. 23.) According to the United States Sentencing Guidelines, Defendant's recommended sentence was 97 months to 121 months. (PSR ¶ 86.) The Probation Office recommended a low end of the guideline-sentence at 97 months. (*Id.* ¶ 102.) Defendant advocated for a below-guideline

1    sentence of 60 months based on his lack of criminal history, alleged lack of directly harming

2    children, lack of an antisocial personality disorder, family support, and the harshness of the child

3    pornography guidelines. (ECF No. 29.) The Court considered Defendant's arguments and imposed

4    a sentence of 84 months with lifetime supervision. (ECF No. 37.)

5         Defendant is currently a 29-year-old man incarcerated at Terminal Island FCI with a

6    projected release date of April 2, 2024. *Find an inmate*, Fed. Bureau of Prisons,

7    https://www.bop.gov/inmateloc/ (last visited on Dec. 21, 2020). In April and May 2020, FCI

8    Terminal Island experienced a large COVID-19 outbreak with approximately 70% of the

9    population becoming infected resulting in two deaths. (ECF No. 41 Ex. 2 at 3, 11.) Currently,

10   however, there are no inmates with active cases of COVID-19 and only 4 staff members with the

11   illness. (*COVID-19 Coronavirus: COVID-19 Cases*, Fed. Bureau of Prisons,

12   https://www.bop.gov/coronavirus/ (last visited Dec. 21, 2020). This institution has taken numerous

13   additional protocols to prevent another outbreak including routine testing, new inmate and staff

14   screening procedures, and enhanced hygiene and cleaning protocols including cleaning the

15   common areas multiple times a day with a disinfectant designed to kill human coronavirus. (ECF

16   No. 41 Ex. 3.)

17        Defendant suffers from asthma, anxiety, and depression. (ECF No. 40.) Defendant's

18   anxiety and depression have been major. He attempted suicide in January 2018 after his fiancé left

19   him, he lost his job, and was going through a bankruptcy. (PSR ¶ 68.) As for his asthma, the

20   medical records indicate that it is treated with an inhaler. (ECF No. 40 at 28.) During a doctor's

21   visit on May 31, 2019, Defendant indicated that his last asthma attack was a week ago that

22   happened while he was exercising. (*Id.* at 16.) Asthma severity is parsed into four categories:

23   intermittent, mild, moderate, and severe. *Overview of Changes to Asthma Guidelines: Diagnosis*

24   *and Screening*, American Family Physician, https://www.aafp.org/afp/2009/0501/p761.html (last

visited Dec. 18, 2020). In classifying the severity of one's asthma, the physician would consider frequency of symptoms, whether the condition causes nighttime awakenings, frequency by which a "short-acting beta agonist" is needed to control an asthma attack, the level by which normal activity is interfered with, and overall lung function. *Id.* A person over twelve years of age is considered to have intermittent asthma when he experiences symptoms less than three times per week, less than three nighttime awakenings per month, needs to use an inhaler to mitigate an attack less than three times a week, no limitation with normal activity, and "normal [forced expiratory volume in one second] between exacerbations; [forced expiratory volume in one second] >80 percent of predicted; [forced expiratory volume in one second]/[forced vital capacity is] normal." Defendant also claims to have smoked a pack of cigarettes a day for seven years. (ECF No. 40 at 22.)

The CDC has identified a number of factors that increase one's risk of becoming severely ill from COVID-19. *Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Dec. 21, 2020). This list includes a history of smoking as a condition that *may* increase one's risk. *Id.* This list also includes moderate to severe asthma as a condition that *might* increase one's risk. *Id.* Anxiety and depression have not been listed by the CDC. *Id.*

Defendant has acquired a letter from Dr. David Watkins, MD, MPH. (ECF No. 39 Ex. D.) He claims that "it is more likely than not that [Defendant] will acquire Covid-19 at Terminal Island FCI within the next three months." (*Id.*) He also "estimate[s] that his risk of requiring hospitalization for complications would be around 20-30%, and his risk of death would be around 5-10%." (*Id.*)

///

1    Defendant, through counsel, has filed a request with the warden of Terminal Island FCI

2    asking the BOP to file a motion for compassionate release based upon his asthma, depression, and

3    anxiety along with the COVID-19 pandemic on October 5, 2020. (ECF No. 39 Ex. B) The warden

4    denied this request on November 3, 2020. (*Id.*) On December 16, 2020, Defendant, through

5    counsel, sent an updated request to the warden noting Defendant's history of smoking. (ECF No.

6    42 Ex. C.)

7                                **LEGAL STANDARD**

8    A district court may not generally "modify a term of imprisonment once it has been

9    imposed." 18 U.S.C. § 3582(c). One exception to this rule is that a court may grant a reduction to

10   a term of imprisonment "(and may impose a term of probation or supervised release with or without

11   conditions that does not exceed the unserved portion of the original term of imprisonment)" based

12   on "extraordinary and compelling reasons." § 3582(c)(1)(A). Congress delegated the sole authority

13   to determine what constitutes extraordinary and compelling to the Sentencing Commission.

14   28 U.S.C. § 994(a)(2)(C) (requiring the Commission to promulgate policy statements for

15   § 3582(c)); *id.* § 994(t) ("The Commission . . . shall describe what should be considered

16   extraordinary and compelling reasons for sentence reduction . . . ."); *see Dillon v. United States*,

17   560 U.S. 817, 820 (2010) (holding that the Commission's policy statements are binding). Before

18   granting such relief, the court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the

19   extent that they are applicable" and find that "a reduction is consistent with applicable policy

20   statements issued by the Sentencing Commission." § 3582(c)(1)(A).

21   ///

22   ///

23   ///

24   ///

1    Either the Director or a defendant may bring a motion under § 3582(c)(1)(A). A court,

2    however, may not consider a motion brought by a defendant unless he "has fully exhausted all

3    administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf

4    or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

5    whichever is earlier." *Id.*

6                                      **ANALYSIS**

7    The Court denies Defendant's motion because he has not presented an extraordinary and

8    compelling basis for compassionate release, a reduction to time-served this early into Defendant's

9    sentence would not align with the factors of § 3353(a) factors, and that Defendant has failed to

10   show that he is not a danger to society.

11   First, the Court finds that Defendant has not presented an extraordinary and compelling for

12   compassionate release because it still holds that "[U.S.S.G.] § 1B1.13 is applicable, binding, and

13   provides the exclusive list of extraordinary and compelling reasons that may justify compassionate

14   release unless and until Congress, the Commission, or the Director provide for additional bases."

15   *United States v. Baye*, 464 F. Supp. 3d 1178, 1189–90 (D. Nev. 2020). Even if the Court is

16   mistaken on this legal point and it may consider additional bases, Defendant's circumstances are

17   not extraordinary and compelling. Defendant is a 29-year-old man with few health problems. There

18   is no indication in his medical records that his asthma is worse than a mild or intermittent case or

19   that his history of smoking has greatly impacted his health.[1] The single mention of his smoking

20   history in his medical records is his self-reported history during his intake to the facility. It is also

21   likely that he has not smoked for the years that he has been in prison. *See* BOP Program Statement

22   1640.05 (Jan. 7, 2015) at 3 (available at https://www.bop.gov/policy/progstat/1640_005.pdf)

23   ────────────────
     [1] The Government argues that the Court cannot consider Defendant's history of smoking because
24   it was not contained in his initial request for compassionate release to the warden. The Court
     declines to rule on this issue at this time.

1   (noting that inmates are generally prohibited from smoking). Dr. Watkins's "estimate that

2   [Defendant's] risk of requiring hospitalization for complications would be around 20-30%, and his

3   risk of death would be around 5-10%" is therefore dubious. This is especially true given that it

4   does not appear that Dr. Watkins assessed Defendant personally, has failed to provide the basis of

5   his calculation, and the average chance of survival for Defendant's age group of 20 to 49 years old

6   is 98% according to the CDC's prediction. COVID-19 Pandemic Planning Scenarios, Ctr. for

7   Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-

8   scenarios.html (last visited Dec. 21, 2020).

9       Second, Defendant argues that a sentence would be within the § 3353(a) factors based

10  largely on the factors that this Court previously considered when originally sentencing Defendant:

11  lack of criminal history, lack of directly harming children, lack of an antisocial personality

12  disorder, and his family support. These bases are not persuasive as the Court already considered

13  them in issuing its sentence of 84 months. He also points to his behavior in prison, where he lacked

14  any disciplinary infractions, has worked well in the kitchen, and has taken numerous educational

15  courses. As for the arguments based on his behavior in prison, while commendable, they do not

16  merit a reduction of greater than three years, which is nearly 50% of his sentence.

17      Third, a court should deny a motion for compassionate release if the defendant cannot show

18  that he is unlikely to reoffend, including if the crime was receipt of child pornography. *See United*

19  *States v. Kumar*, No. 2:15-CR-185-KJD-CWH, 2020 WL 6702020 at *2 (D. Nev. Nov. 13, 2020)

20  (collecting cases). Defendant claims that he is not a danger to society because he does not have a

21  criminal history and does not have an antisocial disorder. These arguments are not persuasive.

22  Defendant admitted to watching child pornography for fourteen years and coercing his prior

23  girlfriends to participate in these acts. While he was not convicted for molesting children, he

24  admitted to agents that he fantasized about doing such acts. Additionally, Defendant's online

activity showed that he was searching for outlets to do so, and a text message he sent to his prior

girlfriend said that he was a monster and that he has molested children. When asked by agents if

he was addicted to child pornography, he said that it was a "psychological thing." In total, the

Court is not convinced that Defendant is not likely to pose a danger to society if he were released.

In sum, the Court finds that Defendant has not shown an extraordinary and compelling

basis for relief, that a reduction to Defendant's sentence is not within the factors set forth in

§ 3553(a), and that Defendant is a danger to society. The Court therefore denies Defendant's

motion for compassionate release.

<b>CONCLUSION</b>

IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release (ECF

No. 39) is DENIED.

IT IS SO ORDERED.

Dated January 26, 2021.

_____
ROBERT C. JONES
United States District Judge